**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KAREN LUNDREGAN | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-01369-PJM; |
| | * | 19-cv-01595; 19-cv-01596 |
| HOUSING OPPORTUNITIES | * | |
| COMMISSION, *et al.* | * | |
| | * | |
| Defendants | * | |

**DEFENDANTS HOUSING OPPORTUNITIES COMMISSION, COHEN, GHAHHARI,
HAYES, HARRIS, MCDONALD, AND WHTTLEY'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINTS**

**COMES NOW** Defendants Housing Opportunities Commission, Cohen, Ghahhari, Hayes, Harris, McDonald, and Whittley (collectively "Defendants"), and file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint(s), and state the following in support thereof:

**I.      PROCEDURAL BACKGROUND**

On May 9, 2019, *pro se* Plaintiff, Karen Lundregan, filed the instant lawsuit against the Housing Opportunities Commission (hereinafter "HOC") alleging violations of Title VI of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973.  On the Civil Cover Sheet, Plaintiff also indicated that she was alleging violations of the Americans with Disabilities Act, the False Claims Act, and the Torts of Assault, Libel, and Slander.  *See* Complaint, E.C.F. 1 and 1-1.

On May 30, 2019, prior to service of the Complaint, Plaintiff filed a "Motion to Amend Original Complaint/Statement and Relief in Original Lawsuit by Karen Lundregan."  E.C.F. 12.  This amendment added alleged violations of Title VII of the Civil Rights Act (Fair Housing Act), the

Americans with Disabilities Act, the Housing and Community Development Act of 1974, the Violence Against Woman Act, the Age Discrimination Act, and certain United States Department of Housing and Urban Development (HUD) regulations.  *Id.*

On June 7, 2019, Magistrate Judge Sullivan ordered that two additional complaints filed by Plaintiff against employees of HOC, 8:19-cv-01595 and 8:19-cv-01596, be consolidated with the instant action.  E.C.F. 18.  Thereafter, the complaints were filed as "Supplements to the Complaint." E.C.F. 19, 20.  These complaints added employees – Lynn Hayes, Renee Harris, Janice McDonald, Susan Whittley, Ethan Cohen, and Nowelle Ghahhari – as Defendants.  Hereinafter, the Complaint (E.C.F. 1), Motion to Amend Original Complaint (E.C.F. 12), and Supplements (E.C.F. 19, 20) will be referred to collectively as "the Complaint."

On July 12, 2019, Defendants moved for an extension of time until August 30, 2019 to respond to Plaintiff's Complaint.  E.C.F. 40, 42.  This Court granted the extension.  E.C.F. 43.

On August 30, 2019, Defendants filed a Motion to Dismiss Complaints and Supplements (E.C.F. 50).  Also on August 30, 2019, Plaintiff filed an Amended Complaint titled "Amendment to Initial Complaint" against all Defendants in which she added additional alleged violations (E.C.F. 52).  It appears that Plaintiff hand-delivered her Amended Complaint to the Court at 2:29 pm, but it was not entered into E.C.F. and delivered to Defendants until September 3, 2019.  Since the Amended Complaint was filed prior to a responsive pleading, and not within 21 days of service of the original Complaint, the Amended Complaint should be stricken because it does not comply with Federal Rule of Civil Procedure 15.  Given that moving to strike the Amended Complaint would likely be futile because Plaintiff would be able to file her Amended Complaint after the filing of Defendants' responsive pleading, Defendants withdraw their previously filed Motion to Dismiss (E.C.F. 50), and

hereby move to dismiss the Complaint, Supplements, and Amended Complaint (hereinafter, collectively, "the Complaint.").

In addition to the Complaint related documents, since the initiation of this suit, Plaintiff has filed numerous premature motions seeking relief from the Court.  E.C.F. 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 21, 23, 26, 38.  Each of these motions was denied *sua sponte* by Magistrate Judge Sullivan on June 26 and July 10, 2019.  E.C.F. 29, 39.  After the case was assigned to this Judge, Plaintiff refiled her Motion for Order of Suppression and Motion for an Emergency Hearing.  E.C.F. 46, 48.  Both Motions have been opposed by Defendants.  E.C.F. 47, 49.   Plaintiff filed an additional motion, "Emergency Motion to Appoint Legal Counsel" after Defendants filed their Motion to Dismiss. (E.C.F. 51).

As will be discussed in detail below, all of the claims against Defendants should be dismissed because Plaintiff has failed to state any cognizable claim for which relief can be granted.

## II.    PLAINTIFF'S ALLEGED FACTS

Plaintiff's Complaint is unclear and difficult to understand, and the recent amendment does not provide any further clarity.  Plaintiff principally appears to allege that she was a victim of "massive discrimination" and "retaliation" and that her "constitutional rights to privacy and HIPPA rights were also massively violated."  E.C.F. No. 1, p. 9.  However, Plaintiff does not state the basis of the discrimination (e.g., race, age, gender, etc.) and does not identify any acts of "discrimination" or "retaliation" against her.

Plaintiff alleges that she was "illegally terminated" [1] by HOC, and that the proper procedures for termination were not followed when HOC failed to launch a proper investigation, failed to provide

---

[1]  It seems from subsequent filings that Plaintiff is referring to the termination of her housing voucher. E.C.F. 19, p. 15.  For purposes of this Motion, Defendants will consider references to the "termination" as the termination of her housing voucher.

her with a copy of the violation packet, and based her termination on initiation of civil legal proceedings.  E.C.F. 1, p. 9, 11.  Plaintiff does not state how the investigation was improper, specify what legal proceedings allegedly caused the termination, and fails to identify the HOC employees involved or the timeframe in which this event occurred.

Plaintiff claims that Defendants Hayes, Harris, and Whittley shared documentation and information about her with her former landlord.  E.C.F. 1, p. 9-11.  Plaintiff also alleges that Defendant Hayes spoke to her sister-in-law after being told that she was not authorized to do so.  E.C.F. 1, p. 10.  Plaintiff does not specify what Defendant Hayes shared with her sister-in-law or the timeframe in which they spoke.  Plaintiff also does not identify the information shared with the former landlord, when the information was shared, or whether and why such communication was prohibited.

Plaintiff asserts that Defendants Harris and McDonald violated HUD guidelines and retaliated against her when they did not "honor the legal documentation submitted" by her current landlord, ignored repeated requests for inspections, and supplied false information in the HOC personnel files (that a unit was occupied when it was actually available).  *Id*.  Among other things, Plaintiff does not specify when this occurred, how these actions constituted retaliation, or what "legal documentation" was not honored.

Plaintiff alleges that she submitted medical records in support of a Reasonable Accommodation Request, and that Defendant Cohen assured her that he would destroy the records.  *Id.* and E.C.F. 19, p. 17.  However, she avers that when she went to review her file, the records had not been destroyed.  *Id.*  Plaintiff alleges that Defendants Cohen and Ghahhari forced her to write a letter stating that she would comply with the recommendations of her healthcare providers.  *Id.* at 11; E.C.F. 19, p. 12.  Plaintiff alleges that Defendant Ghahhari was also aware that her medical records

had not yet been destroyed.  E.C.F. 1, p. 11.  Plaintiff claims that Defendants Cohen and Ghahhari shared her medical information with Defendant Hayes, other staff at HOC, and other third parties.  E.C.F. 19, p. 15; E.C.F. 19, p. 16.  Plaintiff does not identify the third-party with whom the documents were shared, or state why this disclosure was legally impermissible.  Plaintiff avers that her Reasonable Accommodation Request was granted on May 23, 2018.  E.C.F. 19, p. 17.

Plaintiff added that she attempted to resolve this matter before filing this suit by meeting with the Executive Director of HOC (Stacy Spann) and Defendant Hayes in January 2018, meeting with the Chief Operating Officer of HOC (Shauna Sorrells) in September 2018 and arranging and attending a Mediation on December 20, 2018.  E.C.F. 12, p. 1-2.  Plaintiff admits that her voucher was reinstated at the September 2018 meeting, but claims that none of these attempts were successful.  *Id.*; E.C.F. 20, p. 14.  Plaintiff also alleges that she filed several online complaints with HUD that were never followed up on or investigated.  E.C.F. 19, p. 24.

Plaintiff seeks payment for monetary damages, emotional distress, punitive damages, costs associated with this litigation, and impermissible injunctive relief such as court oversight of HOC, re-training of employees, and court-ordered probation for the named Defendants.  E.C.F. 20, p. 16-18.  Plaintiff also seeks intervention from the American Bar Association as to Defendant Ghahhari.  E.C.F. 19, p. 22.

## III.    LEGAL STANDARD FOR FAILURE TO STATE A CLAIM

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint when the allegations of fact do not properly state a claim on which relief can be granted.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 67 L. Ed. 2d 929 (2007).  Further, the "plaintiff's obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A plaintiff has the burden of pleading "more than a sheer possibility that a defendant acted unlawfully," and to meet that burden, must make more than "naked assertions of wrongdoing" without any "factual enhancement." *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (citations and internal quotations omitted).

In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), the court must consider the well-pleaded material allegations in the light most favorable to the plaintiff and accept those factual allegations as true. *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217-18 (4th Cir. 1994)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d. 209 (1986) (*citing Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)). Nor is the court bound to accept a plaintiff's legal conclusions based on the facts alleged, *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche,* 293 F.3d, 726, 730 (4th Cir. 2002) (citation omitted).

The purpose of Rule 12(b)(6) is to provide the defendant with a mechanism to test the legal sufficiency of the complaint, but not the facts that support it. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). A complaint should be dismissed when it lacks a cognizable legal theory or is insufficient from a factual basis to state a legal claim against another party. W*ellmore Coal Corp.*, 609 F.2d at 1085-86. As discussed below, because Plaintiff's Complaint fails to state anything more than her opinions and conclusions about her interactions with Defendants. She fails to plead factual

allegations supporting the elements of any cognizable cause of action and does not meet the pleading standards of Rule 12(b)(6).

## IV.    LEGAL ARGUMENT

### A.    Plaintiff's Complaint Should Be Dismissed Because It Violates the General Rules of Pleading (Fed. R. Civ. P. 8).

Rule 8(a)(2) provides that an original claim "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Further, Rule 10(b) provides that:

> [a]ll averments of claim . . . shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . .  Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth.

The pleading requirements are based upon the premise that the plaintiff has to give the defendant "fair notice" of what the claim is and the grounds upon which it rests, but Rule 8(a)(2)'s "simplified" and "liberal" pleading requirement "has its limits."  *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005) (pleading did not meet Rule 8(a)(2)'s liberal requirement; 2 Moore's *Federal Practice* § 12.34(1)(b) at 12-61 (3rd ed. 2003).  Similarly, a complaint that does not contain counts that are clear and limited to a single set of circumstances, is properly dismissed for violating Rule 10(b). *Gonzales v. Wing,* 167 F.R.D. 352 (N.D.N.Y. 1996), *aff'd,* 113 F.3d 1229 (2nd Cir. 1997) (unpublished table opinion).  As such, dismissal is appropriate when a complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.

The Complaint in this case does not contain a short and plain statement of facts, nor does it set out counts which properly state viable claims.  The paragraphs in the Complaint are not limited to a single set of circumstances and the claims are not separated according to transactions or occurrences.  The only date listed in the entire Complaint is May 23, 2018 – the date on which

Plaintiff's Reasonable Accommodation was granted.  E.C.F. 19, p. 17.  There are no dates or even timeframes listed for the other alleged wrongs, so Defendants are not able to determine specific acts. Additionally, the Complaint contains conclusory allegations that some discrimination and retaliation occurred, but Plaintiff has failed to present facts to support those allegations.

In *Porter v. Montgomery County Gov't*, 2005 U.S. Dist. LEXIS 44890 (D. Md. Mar. 15, 2005), *aff'd*, *Porter v. Montgomery County Gov't,* 141 Fed. Appx. 193, 2005 U.S. App. LEXIS 18092 (4th Cir. 2005), plaintiff claimed Montgomery County Housing Opportunities Commission and other County and State defendants violated his rights under the Thirteenth and Fourteenth Amendments. This Court found that plaintiff's complaint stated legal conclusions such as "Montgomery County Government has been exercising in unlawful conspiracies to: (i) violate the Civil Rights Statute; (ii) deprive Plaintiff of protection of the law and privileges and immunities; (iii) injure Plaintiff's reputation through gender and religious discrimination; (iv) obstruct or prevent justice; (v) injure mentally and physically; (vi) impede and modify federally funded programs and subsidies; and (vii) use a pattern of racial segregation against Plaintiff and his children."  *Id.* at *1.  The Court ordered plaintiff to supplement his complaint in compliance with FED. R. CIV. P. 8(a) and (e)(1).

Plaintiff Porter filed Amended Supplemental Complaints.  "His statement of facts read as follows:

> Montgomery County has had an ongoing Conspiracy in retaliation, to punish Plaintiff for taking action against them under Title VII and Civil Rights Violation in Connection with Montgomery County Police and Montgomery County Department of Liquor Control. Montgomery County Public School has made in all out attempt to exclude Plaintiff of his parental rights and Equal Rights by denying him equal access of his Custodial Parental Right, in preventing him from seeing or speaking to his children during school hours.

        *               *             *

> Montgomery County Public Schools have been conspiring to help his spouse because he is an Afro American Negro male who has a darker complexion than his spouse and children. . . .  he asserts that it has not assisted him as a custodial parent by failing to send him correspondence regarding report cards and/or school-related issues;
>
> Montgomery County Housing Authority has conspired to violate his civil right under the 4th, 5th, 13th, and 14th Amendment and has 'violated my civil rights in conspiracy to sex discrimination;'
>
> Montgomery County practices a historic pattern of racial segregation in schools, government, and housing in conspiracy to dilute congressional policy; and
>
> Montgomery County Circuit Court has been working against Plaintiff to take his children and to 'impede plaintiff from Federal Program' due to his bi-racial marriage.

*Id.* at *2-4 (citations and footnotes omitted).

The Court, "[a]ffording the pleadings a generous construction," dismissed Plaintiff Porter's Complaint, stating, "Even upon careful review of the Supplemental Complaints . . ., the court again finds that Plaintiff makes general, non-fact specific allegations of racial bias.  Conclusory allegations, unsupported by concrete facts, are insufficient to support a claim."  *Id*. at *7-8.

Here, Plaintiff's Complaint simply lists one impermissible legal conclusion after another and contains formulaic recitations, which are not supported by a definite statement of facts sufficient to raise a right to relief.  The facts alleged by Plaintiff against HOC and its employees are minimal, fraught with legal conclusions, and fail to state claims under any alleged theory that have crossed the line from conceivable to plausible.  Thus, Defendants are entitled to dismissal.

**B.      Plaintiff Fails to State a Claim Under the Americans with Disabilities Act and Rehabilitation Act.**

The Complaint fails to state a claim against any Defendant under the Americans with

Disabilities Act (hereinafter "ADA") or the Rehabilitation Act.[2]  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a claim under Title II of the ADA, Plaintiff is required to allege, in sufficient factual detail, the following: (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability. *Petty v. Hite*, Civ. A. No.  DKC 13-1654, 2013 U.S. Dist. LEXIS 180349, at *9 (D. Md. Dec. 26, 2013) (*quoting Constantine v. Rectors and Visitors of George Mason Univ.,* 411 F.3d 474, 498 (4th Cir. 2005) (internal quotations omitted).  "Discrimination includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...." *Waller ex rel. Estate of Hunt v. Danville*, VA, 556 F.3d 171, 174 (4th Cir. 2009).  A claim under the Rehabilitation Act consists of the same elements, however the third element requires that an individual be discriminated against solely based upon a disability.  *Id.*  Furthermore, a claim under the Rehabilitation Act must also allege that the defendant receives federal financial assistance.

Critically, Plaintiff fails to sufficiently plead the first factor – that she has a qualifying disability.  In fact, she fails to plead that she has a disability at all.  The only indications in her Complaint that she is disabled are that she was granted a Reasonable Accommodation after supplying undescribed medical documentation to Defendant Cohen (E.C.F. 19, p. 17).  Secondly, Plaintiff has not alleged that she was denied participation in or the benefit of any HOC program by reason of her unidentified disability.  In fact, Plaintiff  concedes in her Complaint that her

---

[2] Due to the similarity of the elements of the ADA and Rehabilitation Act, these theories will be reviewed together in this section.

Reasonable Accommodation request was granted.  E.C.F. 19, p. 17.  Thus, whatever her disability was, it did not preclude her from enjoyment of HOC services and programs.  Nor does Plaintiff allege any facts to support a plausible claim that any Defendant discriminated against her by either acting or refusing to act because of any disability.

Plaintiff also maintains that Defendants violated Title III of the ADA but has not averred any facts in support.  Title III prohibits "discrimination based on disability in the goods, services, facilities, privileges, advantages, and accommodations of places of public accommodations owned, leased, or operated by private entities…certain HUD recipients and private entities operating housing [] programs are covered by Title III of the ADA."  E.C.F. 12-1, p. 36.  Defendant HOC is a public entity and not governed by Title III.[3]  Plaintiff has not alleged any facts in the Complaint to the contrary.

Based on the foregoing, Plaintiff has not stated a claim against any Defendant under the ADA or Rehabilitation Act.  Plaintiff has not alleged that she was denied any HOC services.  In fact, her Complaint reveals the opposite.  Neither has Plaintiff stated a plausible claim that she was discriminated against by the Defendants because of a disability.  Finally, she has not identified any accommodation the Defendants denied her.  Therefore, to the extent there is an attempt to assert an ADA or Rehabilitation Act claim against the Defendants, such claims should be dismissed with prejudice.

### C.  Plaintiff Fails to State a Claim for Retaliation.

To the extent that Plaintiff's general accusation of "retaliation" falls under the ADA, it fails miserably.  To plead a retaliation claim under the ADA or Rehabilitation Act, Plaintiff must allege that "(1) she engaged in a protected activity, (2) the defendant took an adverse action against her

---

[3]  *See* MD. CODE ANN., HOUS. & CMTY. DEV. § 16-105 MD. CODE ANN., CTS. & JUD. PROC. § 5-301(d)(15).

after she engaged in the protected activity, and (3) there was a causal connection between the two."

*Zimmeck v. Marshall Univ. Bd. of Governors*, 632 Fed. Appx. 117, 120 (4th Cir. 2015).  Plaintiff

also "must allege the predicate for a reasonable, good faith belief" that there had been an underlying

violation of the ADA or Rehabilitation Act.  *Freilich v. Upper Chesapeake Health*, 313 F.3d 205,

216 (4th Cir. 2002).  Plaintiff has not stated that she engaged in any protected activity, or that any

adverse action was taken as a result.   To the extent that her application for a Reasonable

Accommodation is her purported "protected activity," said request was granted.  Hence, there was

no adverse action.   Absent a protected activity and an adverse action, there can be no causal

connection and her retaliation claim must be dismissed.

### D.  Plaintiff Fails to State a Claim Under the Fair Housing Act.

Plaintiff alleges violations of the Fair Housing Act (hereinafter "FHA") without specifying

any specific provisions of the Act that were violated.  The Fair Housing Act prohibits discrimination

in housing on the basis of race, color, religion, sex, national origin, familial status, and disability.

The Fair Housing Act is codified at 42 U.S.C. §§ 3601 – 3619 and lays out in great specificity what

is considered prohibited under the act.  To the extent Plaintiff attempts to state a FHA claim, it fails

for the same reasons as her ADA and Rehabilitation Act claims.  Specifically, she does not allege

a qualifying "disability" (42 U.S.C. § 3602(h)(adopting the ADA's definition of a "disability")),

that Defendants denied her housing "because of" her disability (*id.* § 3604(f)(1)), that Defendants

failed to provide a "reasonable accommodation" (*id.* § 3604(f)(2)), or any facts indicating

"retaliation" (*id.* § 3617).  In fact, Plaintiff concedes in her filings that she requested a reasonable

accommodation, the accommodation was granted, and she was able to retain her housing voucher.

E.C.F. 19, p. 17; E.C.F. 20, p. 14.

Even if the Court construes Plaintiff's claim liberally, Plaintiff seems to be alleging her rights

under the FHA were violated because she was asked to provide medical information to support her request for a reasonable accommodation.  In support, Plaintiff attaches to her Complaint a publication by the United States Department of Justice and the United States Department of Housing and Urban Development titled "Reasonable Accommodations Under the Fair Housing Act" which provides a summary on the rules regarding the FHA.  E.C.F. 12-1.  Contrary to Plaintiff's claim, this attachment notes that housing providers can request supporting documents *including medical records* if they are necessary to verify "(1) that the person meets the Act's definition of disability (*i.e.*, has a physical or mental impairment that substantially limits one or more major life activities), (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation."  E.C.F. 12-1, p. 13.  In addition, Plaintiff alleges that Defendants violated the FHA because they shared medical information with others.  However, this is not an action prohibited under the FHA.  Accordingly, Plaintiff has failed to state a claim under the FHA and this theory of liability should be dismissed.

> **E.** **Plaintiff Fails to State a Claim Under the Health Insurance Portability and Accountability Act.**

The Health Insurance Portability and Accountability Act of 1996 (hereinafter "HIPAA"), 45 C.F.R. § 164 et seq, was enacted in 1996 and governs the national standards for the electronic exchange, privacy, and security of health information.  Plaintiff generally alleges unspecified violations of HIPAA without factual support.  First, Plaintiff has failed to establish that any of the named Defendants are bound by the HIPPA regulations.  Importantly, HIPPA regulations are narrowly tailored in their applicability to, "(1) a health plan; (2) a health care clearinghouse; (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."  45 C.F.R. § 164.104.  The privacy regulations of HIPPA "do[] not directly regulate employers or other plan sponsors that are not HIPAA covered entities."

*See Maier v. Green*, 485 F. Supp. 2d 711, 2007 U.S. Dist. LEXIS 25628 (WD LA Mar. 30, 2007). Plaintiff has failed to establish that any of the named Defendants are in fact bound by the regulations established by HIPPA and thus any claims regarding violating HIPAA should be dismissed.

Even if we are to assume that at least one of the named Defendants is subject to HIPAA regulations and to assume that Plaintiff has sufficiently pled such a violation, the claims should still be dismissed because HIPPA did not create a private right of action for alleged violations. In *Johnson v. Quander*, the Court was urged to find a private right of action under HIPAA, but declined to do so, noting that every District Court who has "examined whether a private right of action is implied under the HIPAA" has rejected the position. 370 F. Supp. 2d 79, 99-100 (D.D.C. 2005); s*ee also Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006)(holding that Congress did not intend for a private cause of action under HIPAA); *Iannucci v. Mission Hosp.,* 2008 U.S. Dist. LEXIS 100394 (Dec. 11, 2008) (stating "There is no private cause of action under HIPAA"); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078 (9th Cir. 2007) (noting HIPAA provides for no private right of action); *Agee v. United States,* 72 Fed. Cl. 284 (Fed.Ct.Claims 2006) (holding that HIPAA does not provide private right of action and citing cases)(other citations omitted). These courts have concluded that the Secretary of HHS and state Attorney Generals, not an individual plaintiff, are empowered by HIPAA to initiate civil and criminal actions. *Johnson*, 370 F. Supp. 2d at 100. Accordingly, even if the Court construed Plaintiff's pleading liberally and find she has established a HIPPA violation, Plaintiff does not have right to initiate such a claim and it should be dismissed.

### F.    Other Federal Claims.

Next, Plaintiff's Complaints includes a hodge-podge of other "Federal Laws" that were allegedly violated by Defendants. E.C.F. 20, p. 13. She seems to have compiled this list from the U.S. Department of Housing and Urban Development's website where it lists "Fair Housing and

Related Laws." E.C.F. 12-1, p. 35-40.  It appears that Plaintiff merely went down the list and named the "related laws" which struck in her favor regardless of whether there were any violations of the specific laws.  Defendants are unable to determine from Plaintiff's vague allegations what specific cause(s) of action Plaintiff is attempting to assert, meriting dismissal of the entire hodge-podge. *See, e.g.*, *Klayman v. Obama*, 125 F. Supp. 3d 67, 89 (D.D.C. Aug. 21, 2015) (dismissal warranted where defendants must "guess what cause of action Plaintiffs intend to present").  Further, Plaintiff fails to plead allegations that could support violations of any of these "Fair Housing and Related Laws," meriting dismissal on that basis as well.  Each of the remaining "related laws" will be addressed briefly below:

       1.   <u>Civil Rights Act</u> – Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.  E.C.F. 12-1, p. 36.  Plaintiff has not stated her race, color or national origin.  Nor has she stated how she was discriminated against, who discriminated against her, or when the discrimination occurred.

       2.   <u>Section 109, Title I, Housing and Community Development Act of 1974</u> – 42 U.S.C. § 5309 prohibits discrimination on the basis of race, color, national origin, sex, and religion in any program or and activity funded in whole or in part under Title I of the Community Development Act of 1974.  E.C.F. 12-1, p. 37.  Plaintiff has not stated that she is a member of a protected class.  Nor has she stated how she was discriminated against, who discriminated against her, when the discrimination occurred, or whether Defendant HOC received funding under the Act.

       3.   <u>Violence Against Women Act</u> – 42 U.S.C. §§ 14043e-11 provides certain protections for victims of domestic violence, including protections related to housing.  E.C.F. 12-1, p. 37.  Plaintiff has not alleged that she is the victim of domestic violence, that she reported this status

to anyone at HOC, or that she was denied any protections that should have been provided given her status as a victim.

4.  Age Discrimination Act – 42 U.S.C. §§ 6101-6107 prohibits discrimination on the basis of age in programs and activities receiving federal financial assistance. E.C.F. 12-1, p. 37. Plaintiff has not stated her age, how she was discriminated against, who discriminated against her, or when the discrimination occurred.

5.  24 C.F.R., part 107, Executive Order 11063 and Executive Order 12892 – These orders require federal agencies to further fair housing and prevent discrimination in their programs and activities. *Id.*, p. 37, 39. Plaintiff has provided no facts to support that Defendant HOC is a federal agency. For the reasons stated in Section __ supra, Plaintiff has also not alleged any facts to support that Defendants' programs regarding housing were unfair.

6.  False Claims Act – Merely checking the box for other federal claims on Plaintiff's civil cover sheet is insufficient to state a claim, including a claim under the False Claims Act, 31 U.S.C. §§ 3729–3733 (E.C.F. 1-1). Plaintiff has not pled what false statements were made, who made them, how they injured her, and any basis for her to collect damages as a result of this allegation.

7.  Procedural Due Process Rights – In Plaintiff's amended complaint she alleges due process rights violations under the Fourteenth Amendment and "42 U.S. Code Section 1983." (E.C.F. 52, p.2.) The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law...." *U.S. Const*, amend. XIV, § 1. To state a cognizable due process claim, the plaintiff must identify the denial of a protected property or liberty interest. *See Biser v. Town of Bel Air*, 991 F.2d 100, 103-04 (4th Cir. 1993) ("to state a substantive due process claim, [the plaintiff] must first demonstrate that he possesses a

'cognizable property interest, rooted in state law,' in the lost benefit"); *Sylvia Develop. Corp. v. Calvert County, Md.*, 48 F.3d 810, 826 (4th Cir. 1995) ("If appellants purport to claim that [the] County denied them procedural due process, then they must establish that … they had property or a property interest...."); *Henderson v. Simms*, 223 F.3d 267, 275 (4th Cir. 2000) ("With no liberty interest to protect, there is no violation of due process ....").  Plaintiff has not pled what rights were violated, by whom, or identified her property or liberty interest.  Even if we are to construe Plaintiff's attachment liberally to allege a violation of her due process right to a hearing on her termination, Plaintiff concedes in her filings that she received hearings on the issue of her voucher termination. (E.C.F 1, p.9.)

All of these assorted claims are unsupported by any factual allegations and must be dismissed.

**G.     Plaintiff Fails to State a Claim for Invasion of Privacy.**

Invasion of privacy is a general term referring to "four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common."  *Bailer v. Erie Ins. Exch.*, 344 Md. at 526 (quoting *Household Fin. Corp. v. Bridge*, 252 Md. 531, 537, 250 A.2d 878, 882 (1969))(quoting Prosser, *Handbook of the Law of Torts* (3d ed. 1964), Ch. 22, at 832).  The four torts of invasion of privacy are defined in the Restatement (Second) of Torts § 652A (1977) as:

(1)     unreasonable intrusion upon the seclusion of another…; or

(2)     appropriation of the other's name or likeness…; or

(3)     unreasonable publicity given to the other's private life…; or

(4)     publicity that unreasonably places the other in a false light before the public.

Quoted in *Bailer*, 344 Md. at 525-26.  *See also Lawrence v. A.S. Abell Co.*, 299 Md. 697, 700-02, 475 A.2d 448, 450-51 (1984); *Hollander v. Lubow*, 277 Md. 47, 54-55, 351 A.2d 421, 424-25, *cert. denied*, 426 U.S. 936, 96 S. Ct. 2651, 49 L. Ed. 2d 388 (1976).

Without any supporting factual support beyond her conclusory statements, Plaintiff initially alleged violations of her privacy based on "intrusion" and "false light."  E.C.F 20, p. 15.  In the amended complaint Plaintiff now alleges violations of her privacy based on all four torts of invasion of privacy (E.C.F. 52, p.1).  Intrusion upon seclusion requires 1) an intentional intrusion; 2) into a private place or affairs of another and; 3) that such an intrusion would be highly offensive to a reasonable person.  *See Bailer*, 344 Md. 515.  Plaintiff has failed to identify what she considered to be the intrusion, when it happened, by whom, how it was intentional, and the reason that a reasonable person would consider the intrusion to be highly offensive.

In a false light privacy claim a plaintiff must assert the following elements: (1) that the defendant gave publicity to a matter that places the plaintiff before the public in a false light; (2) that a reasonable person would find that the false light in which the other person was placed highly offensive to a reasonable person; and (3) that the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the defendant placed the plaintiff.  *See Mazer v. Safeway, Inc.,* 398 F. Supp. 2d 412 (D. Md. 2005).  Plaintiff has failed to allege any of the required elements, namely what information was published, by and to whom, when it occurred, whether the information was false, or whether the discloser acted with reckless disregard.

 Appropriation requires the intentional taking, for one's benefit, without consent, of another's name or likeness.  *See generally Lawrence v. A.S. Abell Co.*, 299 Md. 697, 707, 475 A.2d 448, 453 (1984) (citing RESTATEMENT (SECOND) OF TORTS § 652A).  A prerequisite to bringing an appropriation action is that the plaintiff's likeness has commercial value capable of being appropriated. *Lawrence v. A.S. Abell Co.*, 299 Md. 697, 706, 475 A.2d 448, 453 (1984) ("The Restatement indicates that a person's name or likeness must have "commercial or other value" before an appropriation is actionable.").  Plaintiff provides no factual support for her status as a public figure,

because her likeness and name have no commercial value that could be appropriated.  Without any commercial value to appropriate, the claim must fail.  See *Lawrence*, 299 Md. at 706 (finding no appropriation because "in this case, the children's identity had no such proven "value."  They were not famous and, in fact, were not even professional models.").

Unreasonable publicity requires a Defendant to disclose a private fact to the public that would be (1) highly offensive to a reasonable person and (2) is not of legitimate concern to the public.  *See Pemberton v. Bethlehem Steel*, 66 Md. App. 133, 166 (1986) citing *Restatement of Torts 2d,* § 652D.  It is not an invasion of privacy, however, "to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id., quoting Restatement of Torts 2d,* § 652D, Comment a.  Plaintiff has failed to allege the required elements including what information was disclosed and to whom.  Therefore, all allegations of invasion of privacy should be dismissed.

**H.     Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.**

Plaintiff fails to allege which version of emotional distress is the basis of her claim.  Maryland does not recognize the tort referred to as negligent infliction of emotional (or mental) distress. *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 63, 502 A.2d 1057 (1986), *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986) (the court held that a claim of negligent infliction of emotional distress is not recognized under Maryland law.  "While other jurisdictions may allow recovery under the concept of negligent infliction of emotional distress Maryland does not").   *See also Lapides v. Trabbic,* 134 Md. App. 51, 66, 758 A.2d 1114 (2000) ("[b]ecause Maryland does not recognize the separate and distinct tort of negligent infliction of emotional distress, the lower court properly granted appellee's motion to dismiss appellant's claim"); *Williams v. Prince George's County,* 112 Md. App. 526, 685 A.2d 884 (1996) (motion to dismiss upheld: "Maryland does not recognize the separate and distinct tort of negligent infliction of emotional distress"); *Abrams v. Mayor and Council of Rockville,*

88 Md. App. 588, 594, 596 A.2d 116 (1991) (upholding dismissal of negligent infliction of emotional distress because "it did not present a cognizable claim under Maryland law").

In order to establish intentional infliction of emotional distress, a tort recognized by Maryland, Plaintiff would need to allege intentional, outrageous conduct, that goes beyond all possible bounds of decency on the part of any Defendant. *See e.g. Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977). Specifically, Plaintiff has not alleged any facts to support (1) intentional or reckless conduct, (2) conduct that is extreme and outrageous, (3) a causal connection between the wrongful conduct and the emotional distress, and (4) severe emotional distress. *Id.* Assuming Plaintiff intended to allege intentional infliction of emotional distress, she failed to allege any of the required elements or facts that would support the claim and it should be dismissed.

## I. HOC Possesses Governmental Immunity from Any State Tort Claims.

Even if Plaintiff has stated viable invasion of privacy or other state tort claims against Defendant HOC, governmental immunity bars any such claims. It is well-established in Maryland that a local government, such as HOC, is entitled to governmental immunity from State tort claims arising out of activities that are governmental in nature. *Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984). "Governmental immunity" is a form of the state's sovereign immunity that protects counties from liability arising out of tortious conduct that occurs in the exercise of a "governmental," rather than a private or "proprietary" function. *Austin v. City of Baltimore*, 286 Md. 51, 53, 405 A.2d 255 (1979); *Godwin v. County Comm'rs*, 256 Md. 326, 260 A.2d 295, 299 (1970). As the court stated in *Duncan v. Koustenis*, 260 Md. 98, 103, 271 A.2d 547, 549 (1970) (quoting *Gold v. Baltimore*, 137 Md. 335 (1921)):

> The immunity or exemption from liability . . . rests upon the theory that the municipality is in the performance of a public or governmental duty and is the instrumentality of the state, exercising a governmental function. In the absence of a statute, expressly or

by necessary implication giving the right of action, the municipality is not liable.

The test for identifying a "governmental function" was stated in *Tadjer v. Montgomery County*, 300 Md. 539, 546-7, 479 A.2d 1321 (1984) (citations omitted):

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature . . . .
>
> *               *               *
>
> Another way of expressing the test . . . is whether the act performed is for the common good of all or for the special benefit or profit of the corporate entity.

Governmental immunity protects a local government against claims that it is directly liable to a plaintiff in the exercise of its functions. "[T]here can be no recovery against a municipality for injuries occasioned by its negligence or non-feasance in the exercise of functions essentially governmental in nature." *Fowler v. Bd. of County Comm'rs*, 230 Md. 504, 507, 187 A.2d 856 (1963).

Maryland appellate courts have repeatedly found governmental immunity applies to a number of functions that are governmental in nature. For example: the operation and maintenance of a public park, *Mayor of Baltimore v. Whalen*, 395 Md. 154, 167, 909 A.2d 683 (2006) (trip and fall plaintiff, who was legally blind, fell into an uncovered utility hole); the operation and maintenance of a courthouse, *Harford County v. Love*, 173 Md. 429, 433, 196 A. 122 (1938) and *Heffner v. Montgomery County*, 76 Md. App. 328, 545 A.2d 67 (1988) (slips and falls in the respective County courthouses); the operation and maintenance of a town pool, *Town of Brunswick v. Hyatt*, 91 Md. App. 555, 564-65, 605 A.2d 620 (1992) (slip and fall at a public pool); the operation of the Rockville Civic Center, *Burns v. City of Rockville*, 71 Md. App. 293, 308, 525 A.2d 255

(1987) (trip and fall at the F. Scott Fitzgerald Theater located in the Rockville Civic Center); the operation of a day camp, *Austin v. City of Baltimore*, 286 Md. 51, 63-66, 405 A.2d 255 (1979) (a camper who could not swim was allowed to go into the water unsupervised and drowned); and the operation and maintenance of a public parking garage, *Bagheri v. Montgomery County*, 180 Md. App. 93, 96, 949 A.2d 1 (2008), *cert. denied*, 406 Md. 112 (2008) (trip and fall in hole on concrete surface).

In the present case, all of Plaintiff's decipherable allegations arise from services provided by HOC employees exercising their governmental functions.  Legislative authority created HOC to exercise public and essential governmental functions related to public housing.  *See* MD. CODE ANN., HOUS. & CMTY. DEV. § 16-105.  The Complaint indicates that Defendant HOC provided Plaintiff with a voucher for public housing and granted her Request for a Reasonable Accommodation.  It is clear that governmental immunity applies to any Sate tort claims based upon the services HOC provided to Plaintiff, which are sanctioned by statute.  Further, its efforts to provide public housing are solely for the public benefit and provided by HOC not for profit. Therefore, the governmental immunity test is satisfied, and bars any State tort claims against Defendant HOC.

**J.      Plaintiff's Requests for Injunctive Relief Should Be Denied.**

Because Plaintiff's Complaint must be dismissed for all of the reasons stated herein, all of Plaintiff's requests for injunctive relief should be denied.

**V.      CONCLUSION**

**WHEREFORE**, the above premises considered, Defendants respectfully move this Honorable Court to grant their Motion to Dismiss Complaints and dismiss the above-captioned action with prejudice.

FILED: September 13, 2019

Respectfully submitted,

MARC P. HANSEN
COUNTY ATTORNEY

_____/s/_____
Patricia Lisehora Kane, Chief
Division of Litigation
Federal Bar No. 13621
patricia.kane@montgomerycountymd.gov
*(signature by Jacquelyn Allen with the*
*permission of Patricia Lisehora Kane)*

_____/s/_____
Jacquelyn Allen
Associate County Attorney
Federal Bar No. 20594
jacquelyn.allen@montgomerycountymd.gov

_____/s/_____
Stephanie R. Ferner
Assistant County Attorney
Federal Bar No. 20870
stephanie.ferner@montgomerycountymd.gov

Attorneys for Defendants
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of September 2019, a copy of the foregoing was

e-filed and sent via first class mail, postage prepaid to:

Karen Lundregan
4615 North Park Avenue, Apt. 905
Chevy Chase, Maryland 20815
Kaylun3@gmail.com

_____/s/_____
Jacquelyn Allen
Associate County Attorney